UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| TERENCE M. JOHNSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:24-cv-617 (MPS) |
| | : | |
| OFFICER ROWE, et al., | : | |
| Defendants. | : | |
| | : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

The plaintiff, Terrance Johnson, commenced this action asserting that several prison officials violated his rights under the United States Constitution and Connecticut state law. On initial review, the Court permitted the plaintiff to pursue Fourteenth Amendment deliberate indifference claims against Officers Munoz, Hester and Wilder in their individual capacities; Fourteenth Amendment procedural due process claims against Officers Hester and Wilder in their individual capacities; and state common law claims of recklessness against Officers Munoz, Hester, and Wilder. IRO, ECF No. 14 at 9–10. The defendants now move to dismiss the amended complaint, maintaining that the plaintiff failed to allege facts therein sufficient to state a plausible claim upon which relief can be granted and that the defendants are entitled to qualified immunity. Def. Mot., ECF No. 26 at 1. For the following reasons, the motion to dismiss is **GRANTED** in part and **DENIED** in part.

**I. Standard**

The defendants move to dismiss the plaintiff's amended complaint under Fed. R. Civ. P. 12(b)(6). *Id.* To withstand a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To state a plausible claim, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level." *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

That the Court's initial review order permitted one or more claims to proceed past initial review "does not preclude a motion to dismiss under Rule 12(b)(6) and a subsequent finding by the court, after entertaining such a motion, that the claim fails to satisfy the plausibility standard." *King Knowledge Born Allah v. Semple*, No. 3:18-cv-887 (KAD), 2019 WL 109002, at *5 (D. Conn. Jan. 4, 2019); *Smalls v. Wright*, No. 3:16-cv-2089 (JCH), 2017 WL 3477070, at *4 (D. Conn. Aug. 11, 2017) (concluding that a court may reconsider its decision made in an initial review order allowing a claim to proceed because the court may not be able to make a determination that a claim should be dismissed without the "benefit of an adversarial presentation" (quotation omitted)).

When considering whether a claim satisfies the plausibility standard, the Court assumes that the factual allegations are true, but legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." *Goel v. Bunge,*

2

*Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). In general, courts "do not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Id.* (citation, quotation marks, and ellipses omitted). When reviewing a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

## II. Facts

The plaintiff alleges in his amended complaint that during a cell inspection of the plaintiff's whole tier, Officer Rowe confiscated a leaking water bag from an inmate's cell. Am. Compl., ECF No. 13 at 5. As a result, Officer Rowe left a puddle of water in front of the plaintiff's cell. *Id*. Officer Munoz had conducted his tour several times but never acted to remedy the "mess" caused by the leaking water bag. *Id*. After the plaintiff entered his cell with food, he remembered he needed water for his rice. *Id*. When the plaintiff left his cell to get water, he slipped on the puddle outside his cell. *Id*. After he fell, the plaintiff blacked out and experienced whiplash. *Id*. at 5–6.

Officer Munoz approached the plaintiff to ask, "What did you do?" *Id*. at 5. The plaintiff informed Officer Munoz that he was hurt. *Id.* Officer Munoz failed to follow protocol by calling a Code White; instead, he called for help, and Officers Hester and Wilder arrived. *Id*. at 6. Officers Hester and Wilder lifted the plaintiff off the ground after he expressed that he was hurt and that his vision was blurry. *Id*. When Officers Hester and Wilder forced the plaintiff to stand up on his feet, he fell and twisted his leg. *Id*. The plaintiff alleges that there were also "multiple times that I almost fell over due to" their "negligence." *Id*. The plaintiff alleges that these officers "harassed" him to tell him who had "physically assaulted" him. *Id*. The plaintiff had, however,

3

never been harmed before his fall. *Id*. The plaintiff claims he was verbally forced to sign a disciplinary "ticket" to plead guilty or he would have had to stay in segregation for fifteen days. *Id*.

### III. Discussion

The defendants assert several arguments in support of their motion to dismiss. First, the defendants maintain that the plaintiff's deliberate indifference claim against Officer Munoz should be dismissed because the plaintiff "has not pled that the wet floor outside his cell was an exceptional circumstance." ECF No. 26 at 1. Second, the defendants argue that the plaintiff's deliberate indifference claims against Officers Hester and Wilder should be dismissed because the plaintiff's claim "that he 'twisted his leg' and 'nearly fell' is at most *de minimus* and therefore insufficient to establish deliberate indifference." *Id.* Third, the defendants claim that the plaintiff's procedural due process claim against all defendants should be dismissed because the plaintiff "fails to allege that any of Defendants were personally involved with his allegedly forced guilty plea." *Id.* And last, the defendants contend that the plaintiff's "failure to allege any constitutional violation also entitles Defendants to qualified immunity from suit." *Id.* The Court discusses each basis for dismissal in turn.

#### A. Deliberate Indifference Claim against Officer Munoz

The Eighth Amendment requires prison officials to provide "humane conditions of confinement," which include "'tak[ing] reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). But because the plaintiff was a pre-trial detainee when he was injured, *see* ECF No. 14 at 1 n.1, his claim "of unconstitutional conditions of confinement [is] governed by the Due Process Clause of the

4

Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

A pretrial detainee who asserts a conditions-of-confinement claim under the Fourteenth Amendment must allege facts satisfying two components. First, the plaintiff must allege facts showing that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Id.* To determine whether a condition was "sufficiently serious," the Court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis original). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

Second, the plaintiff must allege facts showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "A detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Id.*

When applying this standard to a plaintiff's allegations that he "stepped into a snowbank and slipped on concealed ice, permanently injuring his ankle and shoulder," the Second Circuit concluded that the plaintiff's complaint "did not make any claims of exceptional circumstances that would elevate the Green Haven yard conditions beyond the typical level of danger presented by a slippery sidewalk or a wet floor." *McCray v. Lee*, 963 F.3d 110, 114, 120 (2d

Cir. 2020). The *McCray* court accordingly affirmed dismissal of the plaintiff's conditions-of-confinement claim under Rule 12(b)(6). *Id.* at 120–21.

This Court later acknowledged in *Branch v. Guadarrama*, No. 3:24-CV-00536 (MPS), 2024 WL 3342991 (D. Conn. July 9, 2024), "that slip-and-fall claims are seldom viewed as rising to constitutional dimension, but could if 'exceptional circumstances' elevated the danger of a condition beyond that typically presented by a slippery sidewalk or a wet floor." *Id.* at * 3 (cleaned up) (quoting *McCray*, 963 F.3d at 115, 120). Accordingly, this Court and other courts in this District have recognized conditions-of-confinement claims where the plaintiff has alleged "exceptional circumstances" elevating the danger of a condition beyond that typically presented by a wet floor. *See*, *e.g*., *id.* (slippery floor caused by leaking roof documented long before plaintiff's slip and fall could constitute "exceptional circumstance"); *Abernathy v. Comm'r of Correction*, No. 3:20-CV-00628 (VAB), 2021 WL 1240018, at *7 (D. Conn. Apr. 2, 2021) (concluding allegations that correctional staff ignored waxed wet floor that was extremely slippery suggested an "exceptional circumstance" involving a violation of contemporary standards of decency).

In the initial review order, this Court relied on *McCray*, *Branch*, and *Abernathy* to conclude that the plaintiff here had alleged facts suggesting an "exceptional circumstance" elevating the danger of a condition beyond that typically presented by a wet floor because the water puddle was directly outside of the plaintiff's cell and was not remediated when Officer Munoz toured the plaintiff's cell block "several times." *See* ECF No. 14 at 6. The defendants, however, maintain that plaintiff has not alleged facts suggesting an "exceptional circumstance" because "the slippery floor existed for a matter of hours, as opposed to days." ECF No. 26-

6

1 at 7. But the complaint does not specify whether it was "hours" or "days." What it says is that "Munoz did his tour several times and never acted on the mess that was created." ECF No. 13 at 5. Because I must draw all reasonable inferences in favor of the plaintiff at this stage, I infer that the risk of a fall was obvious to Munoz because he had walked by the puddle "several times."

The amount of time a slippery surface existed was not determinative in *Branch*, *Abernathy*, or *McCray*. *Branch* involved allegations that plaintiff slipped on a wet cell block floor caused by a roof leak that "was documented long before he slipped and fell" and was "willfully neglected or ignored" by prison officials. *Branch*, *supra*, at *3. This Court could "infer from the presence of the bucket used to collect water falling through the ceiling . . . that the risk was obvious to prison officials" and that "[p]rison officials recklessly failed to act with reasonable care to mitigate this obvious risk." *Id.* Accordingly, this Court concluded that "[t]he persistently dangerous condition of the floor over time elevates the wet floor here to an 'exceptional circumstance.'" *Id.* (citing, *inter alia*, *Abernathy*, *supra*, at *7; *Helling*, 509 U.S. at 36). The same is true here: The allegations suggest that the dangerous condition of the wet floor outside the plaintiff's cell was obvious to Munoz and that he recklessly failed to mitigate this obvious risk.

*Abernathy* involved similar allegations that a cell block floor "became saturated with water" because of "a broken ventilation system inoperable for several days." *Abernathy*, *supra*, at *1. The plaintiff informed prison officials about the wet floor, but they told the plaintiff that "he should not 'worry about it'" and "made no effort to discontinue movement to remedy the risk posed by the saturated floor." *Id.* The *Abernathy* court concluded that plaintiff's allegations "raise[d] an inference that the John Doe Officers consciously ignored a risk of harm posed by a

7

potentially extremely slippery floor for two days." *Id.* at *7 (citing, *inter alia*, *Helling*, 509 U.S. at 36). And as in *Branch*, these additional facts combined to "suggest an exceptional circumstance involving a violation of contemporary standards of decency." *Id.*

That the slippery cell block floor "was documented long before [the plaintiff] slipped and fell" in *Branch* and "consciously ignored" by prison officials "for two days" in *Abernathy* was relevant only insofar as it showed prison officials' knowledge of the condition and their failure to remedy it—allegations absent from *McCray*. Unlike the plaintiff in *McCray*, who merely alleged he slipped on ice that was concealed beneath "waist-high" snow in the prison yard without alleging prison officials knew of the dangerous condition, *McCray*, 963 F.3d at 114, the plaintiff alleged in *Branch* and *Abernathy* that officials knew of the dangerous condition and failed to remedy it. This knowledge of the dangerous condition and refusal to remedy it—not the amount of time that the dangerous condition had been present—was the "exceptional circumstance" that elevated the slippery floor "beyond the typical level of danger presented by a slippery sidewalk or a wet floor." *McCray*, 963 F.3d at 120.

Here, as noted and as with the prison officials in *Branch* and *Abernathy*, Officer Munoz was aware of the slippery floor in the cell block because he conducted his tour "several times," ECF No. 13 at 5, and here, as with the prison officials in *Branch* and *Abernathy*, Officer Munoz never acted to remedy the slippery floor despite knowing of it. *See id*. Here, as with the plaintiffs in *Branch* and *Abernathy*, the plaintiff alleges facts that suggest a prison official knew of the slippery floor but failed to remedy the condition. When reasonable inferences are drawn in favor of the plaintiff, these additional allegations remove this case from those cases involving "a run-of-the-mill wet floor" (*McCray*) and place it among those cases involving an "exceptional

8

circumstance" (*Branch* and *Abernathy*). Accordingly, the defendant's motion to dismiss is denied on this ground.

### B. Deliberate Indifference Claim against Officers Hester and Wilder

Officers Hester and Wilder move to dismiss the deliberate indifference claim against them because they maintain that the plaintiff failed to allege facts suggesting they were deliberately indifferent to the plaintiff's serious medical needs. ECF No. 26-1 at 7.

Because the plaintiff was a pretrial detainee when he allegedly slipped on the water outside of his cell, *see* ECF No. 14 at 1 n.1, his deliberate indifference to serious medical needs claim is evaluated under the Fourteenth Amendment. *See Darnell*, 849 F.3d at 29. Deliberate indifference to serious medical needs may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (footnotes omitted).

"To state such a claim, a plaintiff must plead facts showing that [he] had a serious medical condition and that it was met with deliberate indifference." *Bruno v. City of Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018) (citation and quotation marks omitted). A "serious medical condition" is one that "is, in objective terms, sufficiently serious - that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citations and quotation marks omitted). If a plaintiff establishes that he had a serious medical condition, the plaintiff must next show that a particular defendant was deliberately indifferent to that condition. *See Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019). "[A] detainee

asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* at 87 (emphasis omitted).

The plaintiff alleges in his amended complaint that Officers Hester and Wilder arrived to help the plaintiff after Officer Munoz called for help. *See* ECF No. 13 at 6. According to the plaintiff, Officers Hester and Wilder lifted the plaintiff off the ground. *Id*. After Officers Hester and Wilder forced him to stand up on his feet, the plaintiff fell and twisted his leg. *Id*. The Court concluded in its initial review order that the plaintiff's deliberate indifference allegations against Officers Hester and Wilder were "thin" and "barely sufficient to permit him to proceed on his Fourteenth Amendment damages claims against Officers Hester and Wilder for acting with deliberate indifference to an obvious risk of harm to his health and safety after his fall." ECF No. 14 at 7. Officers Hester and Wilder now maintain that the plaintiff's deliberate indifference claim against them should be dismissed because the plaintiff failed to allege facts satisfying the objective and subjective components of a deliberate indifference claim against these officers.

First, Officers Hester and Wilder maintain that "the Plaintiff's alleged condition is not sufficiently serious." ECF No. 26-1 at 8. They maintain that the plaintiff's "twisted leg" was not "a condition which could produce 'death, degeneration, or extreme pain.'" *Id.* at 9. Were the complaint drafted by counsel, the Court would tend to agree. But "submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis

10

original; quotation omitted). A "twisted leg" could suggest a serious medical need, like a knee injury. *See*, *e.g.*, *Vines v. McCrystal*, No. 3:18CV1432(MPS), 2018 WL 6050896, at *4 (D. Conn. Nov. 19, 2018) (concluding "[t]he plaintiff's allegations that Officers Olivio and Barrows refused to facilitate treatment of his knee injury by the medical department, despite his complaints of excruciating pain, state a plausible claim of deliberate indifference to a serious medical need.").

Second, Officers Hester and Wilder argue the plaintiff does not allege that these defendants "failed to provide [the plaintiff] or assist him in receiving necessary medical care." ECF No. 26-1 at 9. The Court agrees. Even if the Court liberally construes plaintiff's amended complaint, the plaintiff's allegations do not suggest that Officers Hester and Wilder were deliberately indifferent to the plaintiff's serious medical condition. By the plaintiff's account, these officers lifted the plaintiff off the ground after the plaintiff told them he was hurt. *See* ECF No. 13 at 6. While the plaintiff allegedly fell as the officers attempted to get him to his feet, the officer's efforts to help the plaintiff constitute, at most, negligence, especially when considering the wet condition of the floor. *See*, *e.g.*, *Germano v. Cook*, No. 3:19-CV-01204 (JAM), 2020 WL 264763, at *9 (D. Conn. Jan. 17, 2020) (concluding that plaintiff's allegations that correctional officer "neglected to help him safely negotiate the step into the prison van, resulting in his foot injury . . . sound at best in negligence and may not support a claim for deliberate indifference to safety."). Such allegations of negligent conduct do not establish deliberate indifference. *See id.*; *Farmer*, 511 U.S. at 835 (noting that "*Estelle* establishes that deliberate indifference entails something more than mere negligence"). Accordingly, the plaintiff's deliberate indifference claims against Officers Hester and Wilder are dismissed.

### C. The plaintiff's Procedural Due Process Claim

Defendants also move to dismiss the plaintiff's procedural due process claims. *See* ECF No. 26-1 at 10. The plaintiff alleged in his amended complaint that he was "verbally forced to sign a ticket that plead me guilty or stay in seg 15 days." ECF No. 13 at 6. The Court liberally construed this allegation as a procedural due process claim and permitted the plaintiff to pursue damages from Officers Hester and Wilder. *See* ECF No. 14 at 8. These defendants now move to dismiss these claims because the plaintiff failed to allege which officer forced him into signing the disciplinary ticket. *See* ECF No. 26-1 at 10.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement requires "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (footnote omitted). Conclusory allegations of personal involvement are insufficient. *See Davis v. United States*, 430 F. Supp. 2d 67, 79 (D. Conn. 2006) (noting that "Defendant's personal involvement cannot be inferred or presumed from Plaintiff's 'bald assertion[s] and conclusory terms.'" (quoting *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir. 2000)).

The plaintiff alleges that Officers Hester and Wilder were "constantly harass[ing] [the plaintiff]" to tell them who physically assaulted him, but he does not allege that Officers Hester or Wilder forced him to sign the disciplinary ticket. *See* ECF No. 13 at 6. The plaintiff merely states that "[he] was verbally forced to sign" it, without specifying who verbally forced him to do so. This conclusory allegation is insufficient to establish personal involvement. *See Foster v.

*Connecticut*, No. 3:24-CV-773 (JAM), 2024 WL 4528874, at *3 (D. Conn. Oct. 18, 2024) (citing *Jean-Baptiste v. Froehlich*, No. 3:21CV01482 (SALM), 2022 WL 94407, at *2 (D. Conn. Jan. 10, 2022) (collecting cases)) (stating that the plaintiffs' "conclusory allegations that the 'defendants' violated their rights" without alleging "any facts to support these claims or identify the nature of the personal involvement of any individual actors" was insufficient to establish personal involvement). Accordingly, the plaintiff's procedural due process claim is dismissed.

### D. Qualified immunity

The defendants last move to dismiss the amended complaint on qualified immunity grounds. *See* ECF No. 26-1 at 11. "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). Qualified immunity may be asserted on a motion to dismiss because "qualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (quotation omitted). However, a defendant asserting a qualified immunity defense on a motion to dismiss must overcome a "formidable hurdle," *Horn v. Stephenson*, 11 F.4th 163, 169–70 (2d Cir. 2021), as "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) (quotation marks omitted). Defendants bear of the burden of establishing qualified immunity. *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018) ("Qualified immunity is an affirmative defense on which the defendant has the burden of proof.").

The defendants have not met their burden of establishing qualified immunity at the pleadings stage. The defendants maintain that the plaintiff's failure to state a claim against Officers Munoz, Hester, and Wilder "entitles these Defendants to qualified immunity by definition." *Id.* But officers Hester and Wilder's claims of qualified immunity relating to the plaintiff's deliberate indifference and procedural due process claims are moot because the Court has dismissed these claims. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 589 (2d Cir. 1990) ("[O]rder[ing] the district court to (1) dismiss Dube's Fourteenth Amendment claim, and, consequently, (2) dismiss as moot defendants' claim of qualified immunity from section 1983 liability on the Fourteenth Amendment claim."). Officer Munoz's claim of qualified immunity is not moot, but it is insufficient to prevail at the pleadings stage.

The defendants make no effort to show that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Blissett v. Coughlin*, 66 F.3d 531, 539 (2d Cir. 1995) (holding the defendants waived qualified immunity defense by "never articulat[ing] a qualified immunity defense distinct from their contention—the heart of their defense throughout these proceedings—that no constitutional violation occurred."). And, as noted above, when all reasonable inferences are drawn in the plaintiff's favor, it appears, according to the allegations, that Officer Munoz was well aware of a dangerous pool of water outside of plaintiff's cell, had time to remedy it, but refused to do so. Under these circumstances, he does not have qualified immunity.

## IV. CONCLUSION

The Court **GRANTS** the defendant's motion to dismiss as to the plaintiff's deliberate indifference claim against Officers Hester and Wilder and the plaintiff's procedural due process

14

claim against all defendants. The Court **DENIES** the defendant's motion to dismiss as to the plaintiff's deliberate indifference claim against Officer Munoz.

Accordingly, the plaintiff may continue to proceed on his deliberate indifference claim against Officer Munoz and his state common law claims of recklessness against all defendants.

**SO ORDERED** this 27th day of June 2025 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge